UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Criminal No. 13-168-4 (JDB) |
| HONG VO, | |
| Defendant. | |

## MEMORANDUM OPINION

Before the Court is defendant Hong Vo's renewed motion [64] for pretrial release, which the government opposes [66]. In June 2013, after conducting a detention hearing, Judge Royce C. Lamberth granted the government's motion for pretrial detention under 18 U.S.C. § 3142(f)(2)(A) and denied Ms. Vo's motion for pretrial release. [ECF No. 52]. Judge Lamberth found that it was more likely than not that no conditions of release would reasonably assure Ms. Vo's appearance at trial, and ordered that she remain in custody. Id. at 5. Since that order, a federal grand jury returned a superseding indictment, which—among other things—contains twenty-six additional charges against Ms. Vo. In addition, the government made several disclosures pursuant to Brady v. Maryland, 373 U.S. 83 (1963), which Ms. Vo relies on to support her renewed motion. On September 13, 2013, a hearing on the motion was held. Upon consideration of the defendant's renewed motion, the government's motion in opposition, the hearing on September 13, applicable law, and the entire record herein, the Court will deny the defendant's renewed motion for pretrial release.

1

## **LEGAL STANDARD**

The Bail Reform Act provides that, to detain a defendant before trial, the government must establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). If, as in this case, the government seeks pretrial detention only on the ground that the defendant poses a flight risk, it must make that showing by a preponderance of the evidence. United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (quoting United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987)). The government may make this showing by way of proffer. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). The Court may reconsider prior bond determinations based upon new information bearing on the pretrial release issue. See 18 U.S.C. § 3142(f)(2)(B) (permitting court to reopen bond hearing if court finds that "information exists which was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required . . . ."); United States v. Ali, No. 11-106, 2013 WL 47472011 (D.D.C. Sept. 5, 2013) ("Congress clearly intended that courts be able to reopen and reconsider prior bond determinations."). Ms. Vo contends that several material developments have occurred since Judge Lamberth granted the government's motion for pretrial detention. In particular, she argues that the government's recent Brady disclosures significantly undercut the weight of the evidence against her, and that her newly proposed conditions of release would reasonably assure her appearance at trial.

**DISCUSSION**

After carefully considering the four factors set out in section 3142(g)[1] in light of the new information contained in Ms. Vo's motion, the Court finds by a preponderance of the evidence that no condition or set of conditions will reasonably assure the defendant's appearance at trial.

I. **BALANCING THE SECTION 3142(g) FACTORS**

    A. **Nature and Circumstances of the Offenses Charged**

First, the nature and circumstances of the offenses charged strongly favor detention. Previously, Judge Lamberth found that this factor favored detention because the serious nature of Ms. Vo's offenses and the punishments Congress has provided for those offenses give Ms. Vo a substantial incentive to flee the United States. [ECF No. 52 at 3]. Since Judge Lamberth's pretrial detention order, Ms. Vo has been charged with twenty-six additional offenses: thirteen counts each of bribery and visa fraud. Ms. Vo argues that under the United States Sentencing Guidelines ("Guidelines"), these counts may be grouped together for the purposes of sentencing because they are not based on additional criminal conduct. Put another way, Ms. Vo contends that the addition of these counts does not significantly increase the potential sentence she would face upon conviction. See U.S.S.G. §§ 3D1.1-3D1.5. Nevertheless, even if the counts are grouped together under the Guidelines, Ms. Vo would likely face a more severe sentence than under the original indictment because Congress has imposed stiffer penalties for bribery and visa fraud than for conspiracy: the starting point under the Guidelines for any grouped counts would

---

[1] Those factors are: (1) the nature and circumstances of the offense charged, including whether the offense involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

be the highest offense level of the counts in the group. See U.S.S.G. §§3D1.3. As a result, the additional counts in the superseding indictment do increase the severity of the potential sentence Ms. Vo would face upon conviction. Hence, if anything, this factor weighs more heavily than before in favor of detention because of the additional counts in the superseding indictment.

### B. Weight of the Evidence Against Defendant

The weight of the evidence against the defendant also strongly favors detention. Previously, Judge Lamberth found that this factor heavily favored detention. [ECF No. 52 at 3]. Evidence supporting Ms. Vo's guilt is relevant here only in terms of the likelihood that she will fail to appear at trial. United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986). Among the evidence proffered by the government and cited by Judge Lamberth in support of his finding was evidence that Ms. Vo was the subscriber on the virtual private network ("VPN") from which over 400 visa applications connected to the scheme were created or submitted; evidence that Ms. Vo and her co-conspirators "cultivated a relationship with an American Consular Officer to facilitate their scheme"; evidence that Ms. Vo "solicited customers and other conspirators to further the scheme"; evidence that Ms. Vo provided her bank account to conceal the proceeds from the scheme; and evidence that Ms. Vo helped to create fraudulent visa applications. Id. at 3-4.

Ms. Vo argues that recent Brady disclosures made by the government uncovered facts that diminish the weight of the evidence. Taken together, she contends, the newly disclosed facts support a "good faith or lack of intent" defense to the charges against her because she had reason to believe "that she was engaged in a legal business to help Vietnamese citizens obtain visas to the United States." Def.'s Renewed Mot. for Pretrial Release ("Def.'s Mot.") 1. Those newly disclosed facts, as proffered by Ms. Vo, are as follows:

4

- Ms. Vo registered the VPN for legitimate purposes. Def.'s Mot. 4.
- The government was told that the website used to facilitate the scheme was not created or managed by Ms. Vo but by an unindicted co-conspirator (JN) who was her boyfriend—in fact, Ms. Vo states, "the prosecution knows that Hong Vo was not involved with the website" at all. Def.'s Mot. 3.
- JN told prosecutors that Ms. Vo "really believed the visa business worked through a lawyer," in part because she was "advised that a Vietnamese immigration lawyer named David worked helping people obtain U.S. visas." Def.'s Mot. 3.
- JN stated that Ms. Vo's brother told her that Michael Sestak was not involved with the visa business. Def.'s Mot. 4.
- JN told prosecutors that Ms. Vo had no reason to suspect that looking for clients for what she purportedly thought was a legitimate visa business was illegal. Def.'s Mot. 4.

In sum, Ms. Vo contends that the evidence shows that she had reason to believe she was engaged in a legal business, which worked through an immigration lawyer, unconnected to Michael Sestak, to help Vietnamese citizens obtain U.S. visas. Further, she contends that the evidence demonstrates that any involvement she had with the website and the VPN used in the scheme was unrelated to the scheme. The Court will address each piece of evidence in turn.

**The VPN.** Even if Ms. Vo <u>registered</u> for the VPN for entirely legitimate purposes, the government has proffered uncontroverted evidence showing that she <u>used</u> the VPN—and allowed her co-conspirators to use the VPN—to perpetrate the scheme by creating or submitting more than 400 visa applications through the network. Government's Mem. in Support of Detention ("Government's Mem.") 7-9, May 22, 2013, ECF No. 28. Her motive for initially registering the VPN is thus irrelevant.

**The website.** Ms. Vo argues that even though the website may have been used by her coconspirators to solicit customers for the scheme, new evidence shows that she had nothing to do with it—undercutting evidence supporting her involvement in the scheme. But in denying Ms. Vo's first bond motion, Judge Lamberth relied on evidence showing that she solicited customers and other conspirators to further the scheme in ways unconnected to the website. [ECF No. 52 at

5

4]. What is more, Judge Lamberth did not rely on any evidence relating to the website. And Ms. Vo's alleged non-involvement with the website is at least contested by the government, which proffers that after she was arrested, Ms. Vo herself told law enforcement officers that she and JN had been tasked with creating the website. Government's Mot. in Opp'n ("Government's Opp'n") 3. She was also on email correspondence in which creation of the content of the website was discussed. Id. at 3-4. In addition, JN told the government that Ms. Vo paid him for some costs associated with the website's maintenance. Id. at 3. Although Ms. Vo does proffer some evidence controverting the government's assertion that she was involved with the website—one part of the scheme—the government's evidence regarding her involvement with the scheme as a whole still weighs heavily, giving her a substantial incentive to flee.

**Whether Ms. Vo believed Sestak was involved or whether she believed the scheme worked legally through an immigration lawyer.** The government's proffer supporting its first motion for pretrial detention indicated that Ms. Vo and her co-conspirators cultivated a relationship with an American Consular Officer to facilitate their scheme. Government's Mem. 9-13. JN's statements regarding Ms. Vo's beliefs about the scheme's legality and Sestak's involvement cut against this evidence somewhat, but ultimately those statements go to whether Ms. Vo knew the scheme was illegal. Indeed, Ms. Vo argues that JN's statements support her "good faith or lack of intent" defense. But the government has proffered quite a lot of evidence that suggests Ms. Vo knew her conduct was illegal. For example, Ms. Vo repeatedly urged others to conceal her involvement and to "keep it on the DL." Government's Opp'n Ex. 3 at 2. She also pressed others to conceal the scheme itself and not to use her real name. Government's Opp'n 3. The government further proffered evidence that she had intimate knowledge of exactly how the fraudulent visa scheme worked. Government's Mem. 13. In short, against the substantial

6

evidence proffered by the government, JN's statements do not significantly diminish the weight of the evidence against Ms. Vo on the intent issue.

Because the newly disclosed evidence does not significantly weaken the evidence against Ms. Vo, the Court finds that based on the government's multiple proffers, the weight of the evidence against Ms. Vo continues to be substantial.

C. **History and Characteristics of the Defendant**

The history and characteristics of the defendant favor pretrial detention. Judge Lamberth found that this factor favored detention because Ms. Vo's "access to substantial assets overseas, combined with her experience living in Vietnam for the past two years, her language skills, and her contacts in Vietnam—a country that maintains no extradition treaty with the United States—all demonstrate her ability 'not only to flee . . . the United States . . . but also to live comfortably and evade capture in foreign jurisdictions.'" [ECF No. 52 at 4] (quoting United States v. Anderson, 384 F. Supp. 2d 32, 36 (D.D.C. 2005)). Ms. Vo proffers no new facts[2] bearing on this factor other than her newly proposed conditions of release, which the Court addresses below. Accordingly, this factor continues to favor pretrial detention for the reasons stated by Judge Lamberth.

D. **The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release**

The nature and seriousness of the danger to any person or the community is essentially a neutral factor as to pretrial release. The government continues to concede that Ms. Vo's pretrial

---

[2] Ms. Vo spills much ink in her motion arguing that because the United States seized her passport, she is unable to flee the United States. Yet according to her, this seizure happened at the time of her arrest—in other words, Judge Lamberth already considered this fact.

7

release would not pose a danger to the community and seeks detention solely because of the risk of flight. This factor thus has little bearing here.

*   *   *   *   *   *   *

Because of the nature and circumstances of the offenses Ms. Vo is charged with, the potential sentence she faces, and the weight of the evidence against her, Ms. Vo continues to have a substantial incentive to flee before trial. And because of her history and characteristics, she also has the ability to flee. On balance, the factors set out in section 3142(g) weigh in favor of pretrial detention because of the substantial risk that Ms. Vo will flee before trial.

## II.  NEWLY PROPOSED CONDITIONS OF RELEASE

Against all that, Ms. Vo proposes new conditions of release, and argues that they would reasonably assure her appearance at trial. Previously, she proposed that she be released to the third-party custody of her parents and that she reside at their home in Denver subject to GPS electronic monitoring and a curfew. Judge Lamberth rejected this proposal, in part because Ms. Vo's parents were not suitable third-party custodians, and noted that "even GPS monitoring suggested by Ms. Vo fails to 'offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction.'" United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990). [ECF No. 52 at 5]. Now, Ms. Vo proposes that she be released to the third-party custody of her cousin Steven Tran, a United States citizen who lives in Maryland, subject to GPS electronic monitoring, a curfew, daily reporting to Pretrial Services, and any additional geographic restrictions the Court deems proper. Ms. Vo further submits that her sister is prepared to post her condominium apartment in Colorado, in which her sister and niece live, and in which her sister has $50,000 in equity, as bond.

Her sister's proposal to post her condominium apartment, generous as it is, does not add much. The government's supplemental memorandum to its first pretrial detention motion, filed under seal with the Court, demonstrated that Ms. Vo's parents are not suitable third-party custodians. Ms. Vo does not propose her sister as a third-party custodian, but for the same reasons that Ms. Vo's parents are not suitable as custodians, her sister's offer to post bond worth $50,000 is insufficient to reasonably assure Ms. Vo's presence at trial. The Court simply has no basis to conclude that the possible loss to her sister on the bond would impact Ms. Vo sufficiently to ensure her presence at trial.

Similarly, Ms. Vo's proposal that Mr. Tran serve as a third-party custodian would not reasonably assure her presence at trial. Counsel admitted at the September 13 hearing that Ms. Vo was not close with Mr. Tran, but counsel asserted that Mr. Tran would responsibly discharge his duties as third-party custodian based on a sense of familial obligation. Ms. Vo relies heavily on United States v. Xulam, 84 F.3d 441 (D.C. Cir. 1996), to argue that she should be released to Mr. Tran's custody. In Xulam, the court reversed the district court's order of pretrial detention despite the "large discretion normally accorded the trial court in this area." Id. at 444. As in Xulam, Ms. Vo is a first-time offender accused of a nonviolent crime. Id. But unlike Xulam, she is charged with offenses carrying stiff penalties; the defendant in Xulam faced a maximum of only six months in prison. Id. at 441. And unlike Xulam, Ms. Vo does not have strong community ties in either D.C. or Colorado. Id. at 444. Nor does her "entire lifestyle and mission strongly suggest that [s]he will stay in place"—in Xulam, the defendant was charged with falsifying a passport to stay in the United States. Id. Here, Ms. Vo has access to substantial assets, she faces harsh criminal penalties, in support of which the government has proffered significant evidence, and she has substantial experience living in Vietnam. In view of those facts,

the sense of familial obligation of a distant relative with whom she is not close is not likely to reasonably assure her appearance at trial. As a result, the Court finds by a preponderance of the evidence that no conditions of release would reasonably assure her appearance at trial. Hence, pretrial detention of defendant Hong Vo continues to be appropriate in this case.

## **CONCLUSION**

For all these reasons, the Court will deny Ms. Vo's renewed motion for pretrial release. A separate order has been issued.

/s/
JOHN D. BATES
United States District Judge

Dated: September 23, 2013