**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

————————————————————
                                    )
UNITED STATES OF AMERICA,           )
                                    )
          v.                        )
                                    )   Criminal No. 13-168 (EGS)
BINH TANG VO, et al.,               )
                                    )
              Defendants.           )
————————————————————)

**MEMORANDUM OPINION**

The government's power when prosecuting criminal cases is not
infinite. Nor does it extend to any power not specifically
forbidden by law. In this case, the government has ostensibly
exercised the power to serve subpoenas *duces tecum*, a power
provided by Federal Rule of Criminal Procedure 17. The
government has not relied on any other authority for its
actions, so it would seem obvious that the government may serve
subpoenas only in a manner authorized by Rule 17.

The government in this case overstepped Rule 17. It issued two
subpoenas, without obtaining court approval, which directed the
Correctional Treatment Facility of the District of Columbia
("CTF") to produce at trial recorded telephone calls of
defendants Hong Vo and Truc Huynh and related materials. This
much was arguably permitted by Rule 17, which authorizes the
issuance of trial subpoenas by the court clerk, to be completed
and served by a party. The subpoenas, however, also indicated

that "[i]n lieu of personally appearing before the Court . . . you may comply with this subpoena by promptly providing the undersigned Assistant U.S. Attorney with [the requested documents]."

CTF produced the materials directly to the U.S. Attorney's Office. Ms. Vo and Ms. Huynh then learned of the subpoenas, and moved to quash them on the grounds that they improperly sought pretrial production without court approval. The government claims to have a longstanding practice of "inviting" subpoenaed parties to make a pretrial production to it directly, but cannot articulate the legal basis for doing so. Instead, the government makes standing and mootness arguments with which the Court dispenses quickly. At oral argument, the government's defense was reminiscent of a grade schooler seeking to avoid detention: Our actions are authorized because nothing specifically prohibits them.[1] Never mind that Rule 17 does not authorize pretrial production absent Court approval. The government's inability to provide legal support for its actions is telling: There is no support. Accordingly, upon consideration of the motions to quash, the response and reply thereto, the oral argument, the applicable law, and the entire record, the Court **GRANTS** the motions.

---

[1] As the grade schooler might say: "You never told me I couldn't."

I.   **Background**

   This case involves an alleged conspiracy to commit visa fraud.
Defendant Michael Sestak has entered a guilty plea and is
pending sentencing. Defendants Hong Vo and Truc Huynh entered
guilty pleas and have been sentenced. Defendant Binh Vo is
incarcerated pending a trial that will begin on April 21, 2015.

   Binh Vo's trial was previously scheduled to commence on
September 16, 2014. On May 2, 2014, the government moved under
Federal Rule of Criminal Procedure 15 to depose Ms. Huynh,
arguing that she had important information and would be
unavailable for trial because she would soon complete her
sentence and be removed to Vietnam. *See* Mot. to Take Deposition,
ECF No. 163. Over Mr. Vo's and Ms. Hunyh's objections, the Court
granted the government's motion. *See United States v. Vo*, No.
13-168, 2014 WL 3056502 (D.D.C. July 1, 2014). Ms. Huynh's
deposition was scheduled for August 14, 2014.

   On July 14, 2014, the government issued subpoenas to CTF,
seeking visitation logs, call logs, and recorded telephone calls
of Hong Vo and Truc Huynh.[2] The subpoenas were made returnable on
dates during Mr. Vo's trial, and were never approved by the
Court. The subpoenas also stated that "[i]n lieu of personally
appearing before the Court on the date indicated, you may comply

---

[2] Similar subpoenas were served regarding Binh Vo and Michael
Sestak, but they are not the subject of the pending motions.

with this subpoena by promptly providing the undersigned Assistant U.S. Attorney with [the requested documents]." Vo Subpoena, ECF No. 201-1 at 1. CTF quickly complied with both subpoenas by producing the materials directly to the U.S. Attorney's Office.

On August 12, 2014, Ms. Vo moved to quash the subpoena related to her. *See* Hong Vo Mot. to Quash, ECF No. 201. Ms. Huynh filed a substantially identical motion to quash the subpoena related to her on September 11, 2014. *See* Hunyh Mot. to Quash, ECF No. 206. The government filed a consolidated opposition on September 22, 2014. *See* Gov't's Opp. ("Opp."), ECF No. 212. Ms. Vo and Ms. Huynh filed their joint reply brief on September 29, 2014. *See* Reply, ECF No. 213. The Court was scheduled to hold a hearing on these motions on October 9, 2014, but Mr. Vo obtained new counsel, so the Court continued the hearing to permit Mr. Vo's new counsel to decide how to proceed. *See* Minute Order of October 3, 2014. On November 21, 2014, Mr. Vo joined the motions to quash filed by Ms. Vo and Ms. Huynh. *See* Binh Vo Mot. to Quash, ECF No. 237. The Court held a hearing on the motions on December 15, 2014.

## II.  The Movants Likely Have Standing, but the Court Has An Independent Obligation to Enforce Rule 17 Regardless.

The government argues that Ms. Vo and Ms. Huynh lack standing to move to quash the subpoenas. *See* Opp. at 5-6. "To establish

Article III standing, [movants] 'must establish that (1) [they] suffered an injury-in-fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision.'" *Tex. Children's Hosp. v. Burwell*, No. 14-2060, 2014 WL 7373218, at *10 (D.D.C. Dec. 29, 2014) (quoting *Associated Builders & Contractors, Inc. v. Shiu*, No. 13–1806, 2014 WL 1100779, at *4 (D.D.C. Mar. 21, 2014)) (second alteration in original). "[A] party may have standing to move to quash a subpoena directed to a third party where that subpoena infringes on the moving party's rights." *Amobi v. D.C. Dep't of Corrections*, 257 F.R.D. 8, 10 (D.D.C. 2009); *see also United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (standing exists "if the subpoena infringes upon the movant's legitimate interests").

Ms. Vo and Ms. Huynh have an interest in the subpoenaed materials due to their concern regarding the disclosure of personal information contained in those materials. Courts have recognized such privacy interests in connection with subpoenas for documents such as financial records, *Khouj v. Darui*, 248 F.R.D. 729, 732 n.6 (D.D.C. 2008); *Griffith v. United States*, No. M8-85, 2007 WL 1222586, at *1 (S.D.N.Y. April 25, 2007), employment records, *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010), and mental-health records, *Jacobs v. Conn. Cmty. Tech. Colleges*, 258 F.R.D. 192, 195 (D. Conn. 2009). Ms.

Vo and Ms. Huynh arguably have a similar privacy interest in their telephone calls.

The government asserts that the movants "are deemed to have consented to the recording," and have thus waived any privacy interest. Opp. at 5 n.6. Such knowledge may be relevant to a Fourth Amendment analysis, as the government noted at oral argument, Transcript of Dec. 15, 2014 Hearing, ECF No. 241 at 44:1-2, but the government cited no authority for the proposition that an individual suffers no injury-in-fact when the information is disclosed with neither notice nor legal process. Indeed, the record does not demonstrate that Ms. Vo and Ms. Huynh consented to their telephone calls being given to anyone who secretly subpoenaed them. The inmate handbook warns only that CTF "record[s] and monitor[s] phone calls for security reasons." *Id.* at 55:18-19; *see also id.* at 56:4-7 (Mr. Feitel: "There's nothing in the waiver and there's nothing in the notification at the beginning of the call that says, '[a]nd you waive your right to have these turned over without legal process,'").[3]

---

[3] The government's cursory argument that Ms. Vo and Ms. Huynh lack standing due to the fact that their cases are no longer pending, Opp. at 5, may be rejected swiftly because one need not be a defendant in a criminal case to file a motion to quash and Ms. Vo and Ms. Huynh remain co-defendants in this case. Similarly baseless is the government's assertion that movants' waiver of their appearances at the December 15, 2014 oral argument indicates that they lack an interest in this

Even if Ms. Vo and Ms. Huynh lack standing, however, "the Court has an independent duty to review the propriety of the subpoena." *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2009). Because subpoenas are issued with the Court's seal and backed by the threat of court-imposed sanctions, "[t]he mere fact that an attorney abuses the subpoena power directly implicates the court itself and creates an embarrassment for the institution." *United States v. Santiago-Lugo*, 904 F. Supp. 43, 48 (D.P.R. 1995). For that reason, courts have found that "regardless of whether the [movant] has standing, the Court is *obligated* under Rule 17 to assess each subpoena for compliance." *United States v. Richardson*, No. 13-86, 2014 WL 6475344, at *2 (E.D. La. Nov. 18, 2014) (emphasis added); *see also United States v. Hankton,* No. 12-1, 2014 WL 688963, at *2 n.1 (E.D. La. Feb. 21, 2014); *United States v. Dupree*, 10-cr-627, 2011 WL 2006295, at *3 (E.D.N.Y. May 23, 2011); *Vasquez*, 258 F.R.D. at 72; *United States v. Tucker*, 249 F.R.D. 58, 60 n.3 (S.D.N.Y. 2008); *United States v. Weissman*, No. 01-529, 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002); *cf. Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("The burden is on the court to see that the subpoena is good in its entirety and it is

---

proceeding. *See* Transcript of Dec. 15, 2014 Hearing, ECF No. 241 at 41:24-42:3. Parties waive their appearances at hearings for a variety of reasons entirely unrelated to their interest in the litigation.

not upon the [subpoenaed party] to cull the good from the
bad."). Accordingly, "it is this court's duty to make certain
that the subpoena power is invoked legitimately and legally."
*Santiago-Lugo*, 904 F. Supp. at 45.

**III. The Motions to Quash Are Not Moot.**

The government also asserts that the motions to quash are moot
because the recordings have already been produced by CTF. *See*
Opp. at 5 n.5. "It has long been settled that a federal court
has no authority 'to give opinions upon moot questions or
abstract propositions, or to declare principles or rules of law
which cannot affect the matter in issue in the case before it.'"
*Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)
(quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). The movants
assert, however, that the Court retains the ability to provide a
remedy by ordering the return or destruction of the recordings
in the government's possession. *See* Reply at 4-5.

In civil cases, a motion to quash is not necessarily rendered
moot by production of the requested materials because "[w]hile a
court may not be able to return the parties to the *status quo
ante* . . . a court can fashion *some* form of meaningful relief."
*Church of Scientology*, 506 U.S. at 12 (emphasis in original).
Specifically, the Court may "order[] the Government to destroy
or return any and all copies it may have in its possession." *Id.*
at 13. "The availability of this possible remedy is sufficient

to prevent [a] case from being moot." *Id.* The same logic applies here.

Courts have recognized that this principle extends beyond civil cases. *See, e.g.*, *In re Grand Jury Investigation*, 445 F.3d 266, 271 (3d Cir. 2006) (grand-jury proceedings). Although another Judge of this Court previously held that it does not extend to criminal cases because of the absence of authority permitting a court to order the return or destruction of materials as a remedy for granting a motion to quash, *Khouj*, 248 F.R.D. at 731, the Fifth Circuit very recently recognized such potential authority. In *United States v. Jackson*, 771 F.3d 900 (5th Cir. 2014), the Fifth Circuit was presented with an appeal of the denial of a newspaper's motion to quash a subpoena *duces tecum*. *See id.* at 901. As that appeal was pending, the newspaper "complied [with the subpoena] and delivered the documents, and the district court declined to turn them over to [the defendant], who pleaded guilty." *Id.* The Fifth Circuit reviewed whether the appeal was moot, applying *Church of Scientology*, holding that it was moot because the defendant could not offer the *Church of Scientology* remedy because the documents were produced to the court but never turned over to the defendant, leaving nothing to return or destroy. *See id.* at 902.[4]

---

[4] In addition, at least one district court has relied on the existence of such a remedy to find that a motion to quash filed

When circumstances are such that the Court can order the
return or destruction of subpoenaed materials, the controversy
remains live, just as it would in a civil case.[5] At oral
argument, the government sought for the first time to provide a
reason why circumstances in this case prevent the Court from
granting a remedy. The government noted that any order that all
documents received in response to the subpoena be destroyed
would mean that "[w]e would essentially have to unwind what's
happened so far" as the materials had also been provided to the
defendant. Transcript of Dec. 15, 2014 Hearing, ECF No. 241 at
49:6-7. The government asserted that it "would not be in favor
of unwinding anything that would prevent the defense from having
access to records that could be exculpatory." *Id.* at 49:9-11.
Mr. Vo, however, has joined the motions to quash. *See* Binh Vo
Mot., ECF No. 237. His counsel also stated that he would support
a partial remedy that would permit him to keep materials that
may be *Brady* or similar materials. *See* Transcript of Dec. 15,
2014 Hearing, ECF No. 241 at 80:1-3. In any event, the parties

---

in a criminal case was not moot. *See United States v. Jenkins*,
895 F. Supp. 1389, 1393 (D. Haw. 1995) ("this court may provide
some effective, albeit limited, relief" by "ordering the
documents returned").

[5] The cases cited by the government merely support the basic
point that "[i]nsofar as there is no relief that could be
granted by th[e] court . . . [the case is] moot." *United States
v. Garde*, 848 F.2d 1307, 1309 (D.C. Cir. 1988); *see also Crooker
v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980).

may differ as to precisely what remedy the Court *should* order, but the Court could order the return or destruction of some or all of the materials at issue as a remedy for granting the motions to quash. The existence of such a remedy is all that is required to defeat mootness.[6]

## IV.   The Subpoenas Were Improper.

The movants argue that Rule 17 was abused and that the subpoenas should therefore be quashed. The government offered only a minimal response, in two footnotes, that were not supported by any legal authority.

### A.   Rule 17 Does Not Permit the Government to "Invite" Pretrial Production Absent Court Approval.

In its first footnote, the government maintained that its "invitation" of pretrial production does not violate Rule 17 because it did not *require* pretrial production. *See* Opp. at 4 n.4. Assessing this argument requires a review of the basis for a party's subpoena authority.

"Rule 17 governs the issuance of subpoenas in criminal cases." Charles Alan Wright, et al., *Federal Practice and Procedure*, § 271 (4th ed. 2014). Parties are therefore bound to follow—and

---

[6] The Court notes the possibility that "[i]f this court found the matter moot, it would also evade review." *Jenkins*, 895 F. Supp. at 1392. The subpoenas were issued without court involvement and CTF complied before anyone—the Court, Mr. Vo, or the movants—learned of the existence of the subpoenas. If a challenge to such a subpoena were rendered moot by CTF's compliance, it could arguably constitute a wrong capable of repetition yet evading review. *See id.*

not exceed—its authorization of subpoena power. The Rule, moreover, "is not intended as a discovery rule." *United States v. Carter*, 15 F.R.D. 367, 369 (D.D.C. 1954); *see also United States v. Brooks*, 966 F.2d 1500, 1505 (D.C. Cir. 1992). Rule 17 first creates a general rule: Subpoenas are issued without the court's involvement when they command the recipient's presence and possibly the production of documents at a particular hearing. *See* Fed. R. Crim. P. 17(a), (c). Rule 17(c) creates a limited exception to this rule, declaring that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Pretrial production is not otherwise mentioned in the Rule.

The subpoenas at issue here directed the appearance of CTF at what was then scheduled to be a trial date. In that respect, they appeared to comply with Rule 17. The government erred, however, when it added to the subpoena the statement that "[i]n lieu of personally appearing before the Court . . . you may comply with this subpoena by promptly providing the undersigned Assistant U.S. Attorney with [the requested documents]." Vo Subpoena, ECF No. 201-1 at 1. Despite the assertion that it is "standard practice" to "invite" a subpoenaed party to make a pretrial production directly to the U.S. Attorney's Office, the government could not articulate any legal basis for doing so. *See generally* Opp.; Transcript of Dec. 15, 2014 Hearing, ECF No.

241 at 28:21–29:17, 33:21–34:15. At oral argument, the government ultimately stated "I don't know what the authority is that we can't." *Id.* at 35:21–22. The Court then asked "So that's your authority: There's nothing that says we can't do it?" to which the government responded "[r]ight . . . . That's my authority." *Id.* at 38:2–7. The government's theory would turn Rule 17's limited authorization for the issuance of subpoenas into a blanket authorization.

This cannot be reconciled with the language of Rule 17. Rule 17 provides a limited grant of authority, mentioning pretrial production only in connection with court approval. *See* Fed. R. Crim. P. 17(c)(1). The Rule, in "leaving advance production to the court's discretion[,] is no mere technicality. It is a vital protection against misuse or improvident use of such subpoenas." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) (quotation marks omitted). "Without the Court's supervision, Rule 17(c) would lend itself to discovery of the broadest sort—a result that the drafters of the Rule decried." *United States v. Finn*, 919 F. Supp. 1305, 1329 (D. Minn. 1995)). For those reasons, "trial subpoenas may not be used to obtain a defendant's prison-recorded conversations prior to the time they are to be offered in evidence unless leave of court is obtained." *Noriega*, 764 F. Supp. at 1494; *see also* Charles Alan Wright, et al., *Federal Practice and Procedure* § 275 n.10 (4th

ed. 2014) ("Leave is required for a pre-trial subpoena duces

tecum."). In this Court, this principle has been established

(with respect to pretrial subpoenas broadly) since 1965:

> Rule 17 is not a rule for discovery. . . . It does
> contain the additional provision that the Court may
> make a subpoena *duces tecum* returnable prior to the
> trial. It was not the purpose of this provision to
> permit some sort of discovery. The object was to
> prevent delays during the trial when documents are
> produced in response to a subpoena *duces tecum* and are
> offered in evidence.
>
>       *   *   *
>
> The Court realizes that at times this rule has been
> used for purposes of additional discovery and some
> courts have acquiesced in this course. This was not
> the intention of the framers of the Rule. In order to
> prevent the Rule from being improvidently used the
> return day of the subpoena may be designated in
> advance of the trial date, only if the Court so
> directs or permits.

*United States v. Ferguson*, 37 F.R.D. 6, 7–8 (D.D.C. 1965).[7]

The government bases its defense on a proposed distinction

between *requiring* pretrial production and merely *inviting* it.

*See* Opp. at 4 n.4. The government offered no legal support for

---

[7] *See also United States v. Sellers*, 275 F.R.D. 620, 623 (D. Nev.
2011); *United States v. W.R. Grace*, 434 F. Supp. 2d 869, 870,
871 (D. Mont. 2006); *United States v. King*, 194 F.R.D. 569, 573
(E.D. Va. 2000); *United States v. Beckford*, 964 F. Supp. 1010,
1020–25 (E.D. Va. 1997); *Finn*, 919 F. Supp. at 1329; *Santiago-
Lugo*, 904 F. Supp. at 46; *Jenkins*, 895 F. Supp. at 1395; *cf.
United States v. Medley*, 130 F. App'x 248, 249–50 (10th Cir.
2005) (where district court had "quash[ed] pretrial document
subpoenas the defense issued without court authorization," the
defendant "offer[ed] no discernible reason why the court abused
its discretion  . . . and having reviewed the record, we can see
none").

this distinction, however. Rule 17, which "governs the issuance of subpoenas in criminal cases," Charles Alan Wright, et al., *Federal Practice and Procedure*, § 271 (4th ed. 2014), does not create a separate procedure for inviting pretrial production. The Rule describes only one scenario under which a subpoena may be used to obtain pretrial production—when the Court so directs. *See* Fed. R. Crim. P. 17(c).[8] A subpoena, moreover, is issued by a court, bears a court's seal, and is backed by the threat of court-imposed sanctions for non-compliance. It is not the tool of a party to use as desired; rather, it is a tool provided by

---

[8] Precedent governing grand-jury subpoenas, while not cited by the government, would not provide a basis either. At the grand-jury stage, the government's "role necessarily requires reviewing and analyzing evidentiary submissions outside of the presence of the grand jury for later presentation to the grand jury." *In re Possible Violations of 18 U.S.C. §§ 201, 371*, 491 F. Supp. 211, 213 (D.D.C. 1980) (quotation marks omitted). In reliance on that fact, some courts have upheld the use of grand-jury subpoenas returnable directly to the government. *See, e.g.*, *United States v. Santucci*, 674 F.2d 624, 628–32 (7th Cir. 1982) (permitting government's issuance of subpoenas seeking handwriting exemplars where "neither were the subpoenas sought or obtained from any grand jury" and recipients were permitted to make their production to the government directly). Such considerations do not apply to pre*trial* subponeas and, in any event, courts in this jurisdiction have sharply curtailed the government's use of grand-jury subpoenas to obtain appearances at the U.S. Attorney's Office. *See Perez v. United States*, 968 A.2d 39, 60–61 (D.C. 2009); *In re Grand Jury Subpoenas to Witness X*, No. SP-2802-00, slip op. at 4–5, 7 (D.C. Super. Ct. Oct. 23, 2001); *Durbin v. United States*, 221 F.2d 520, 522 (D.C. Cir. 1954); *cf. United States v. Thomas*, 320 F. Supp. 527, 529–30 (D.D.C. 1970) (use of a "phony summons[]" purporting to compel individuals to appear for interviews at the U.S. Attorney's Office).

Rule 17 and limited to those uses authorized by Rule 17.[9]
Accordingly, it was improper for the government to issue the
subpoenas without obtaining court approval.

**B.   The Government Has Not Justified Retroactive Approval of
the Subpoenas.**

In its second footnote, the government asks that the Court
retroactively approve the subpoenas. *See* Opp. at 6 n.7. The
movants claim that the government has not provided the type of
specific justification that is required for a court to approve a
subpoena. The standard for approval of a subpoena is well
established. "A subpoena *duces tecum* may not be used for the
purpose of discovery, either to ascertain the existence of
documentary evidence, or to pry into the case of the [opposing
party]." *Carter*, 15 F.R.D. at 369. Rather, it may be used "to
obtain only evidentiary materials." *United States v. Libby*, 432
F. Supp. 2d 26, 30 (D.D.C. 2006) (quotation marks omitted). The
burden rests with the party issuing a subpoena to show "(1)

---

[9] As one district court has noted, the potential for abusive use
of pretrial document subpoenas could arise even where a party
did not request pretrial production, but subpoenaed entities
commonly made voluntary pretrial productions anyway. *See United
States v. Eye*, No. 05-344-01-CR-W-ODS, 2008 WL 1776400, at *7
n.3 (W.D. Mo. Apr. 15, 2008). This practice "may lead to the
inference that although pre-trial production was not requested,
it was certainly expected." *Id.* Even this "inference," with no
request for pretrial production, may be problematic because it
"creates the possibility that the [party] will fail to share all
of the material . . . with no one being the wiser." Such
concerns are only heightened when a party requests pretrial
production.

relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). In essence, "[t]he test . . . is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980).

The movants assert that the only possible use for the subpoenaed materials is impeachment. *See* Vo Mot. at 7–8. The government responded only in a footnote:

> Undersigned government counsel have years of experience obtaining co-conspirator statements, statements against penal interest, and other evidence from recorded jail calls. In light of the extensive participation by Ms. Vo and Ms. Huynh in the fraudulent visa scheme, and because it appears likely that Ms. Vo and Ms. Huynh will be uncooperative witnesses at the trial of their brother and cousin, Binh Vo, the government properly issued subpoenas for Ms. Vo and Ms. Huynh's jail house recordings.

Opp. at 6 n.7. At oral argument, the government added only that:

> [T]he notion that we would not –– in a conspiracy case where they know that a lot of communications happened over the phone, where the conspirators are family members, I don't see why anybody thinks that it would be a stretch of logic and reason for us to believe that when they are incarcerated here in the District of Columbia facing charges, that they would . . . say things that would be evidence that we could potentially even use in our case-in-chief.

Transcript of Dec. 15, 2014 Hearing, ECF No. 241 at 87:11–19.

The government's justification rests in part on the potential for the subpoena to obtain impeachment evidence. *See* Opp. at 6 n.7 (relying on the claim that "it appears likely that Ms. Vo and Ms. Huynh will be uncooperative witnesses at the trial"). That justification cannot support the approval of a subpoena for pretrial production "because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial." *See Cuthbertson*, 630 F.2d at 144.

The remainder of the government's written justification is that government counsel have experience obtaining evidence from jail phone calls in other cases and that the movants participated in the alleged conspiracy. How this provides the requisite specificity is unclear. Under the government's theory, a party need only assert experience obtaining evidence from the general category of document at issue and allege that the target was involved in the crime to obtain a subpoena. Specificity, by definition, requires more: A link that explains what the government expected to find and why it expected to find it. "[T]he specificity requirement could be satisfied if there is a 'substantial likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F. Supp. 2d at 31 (quoting *Nixon*, 418 U.S. at 700). "'[I]f the moving party cannot

reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.'" *Id.* (quoting *Noriega*, 764 F. Supp. at 1493). The government had the opportunity to provide such a justification, but did not do so. Its assertion at oral argument that the movants would undoubtedly "say things that would be evidence that we could potentially even use in our case-in-chief," Transcript of Dec. 15, 2014 Hearing, ECF No. 241 at 87:11-19, is the type of vague justification that makes clear the subpoenas were "a general 'fishing expedition' that attempts to use the rule as a discovery device." *Cuthbertson*, 630 F.2d at 144.

This conclusion is bolstered by the government's previous behavior regarding the materials obtained through these subpoenas. In August 2014, only weeks after the subpoenas were issued, Mr. Vo sought to require the government to translate Ms. Huynh's phone calls in advance of her August 14, 2014 deposition. Mr. Vo had received copies of the Vietnamese-language phone calls only recently, and asserted that the government's discovery obligations—including those created by *Brady v. Maryland*, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500—required that he be provided translations. In an attempt to avoid being required to provide translations, the

government sought to minimize the utility of the phone calls, which it was then in the process of reviewing:

- August 4, 2014: "The government does not know if the conversations are pertinent to this case and the government does not intend to introduce them into evidence at this time." Gov't August 4, 2014 Notice, ECF No. 184 at 3.

- August 7, 2014, after twenty-four calls had been translated: "The speakers in these calls spoke of nothing substantial or pertinent to the case, and only touched on personal, non-relevant issues, such as conditions in the jail." Gov't's Reply, ECF No. 186 at 2.

If, in reviewing the phone calls only weeks after the subpoenas were issued, the government had no idea if they were relevant and no plan to use them as evidence, it strains credulity that the government had a basis for issuing the subpoenas in the first place. When this is combined with the government's failure to offer any remotely specific justification for the subpoenas, it is clear that the subpoenas were just a fishing expedition.

## V.  Conclusion

For the foregoing reasons, the defendants' motions to quash are **GRANTED**. The Court will address the appropriate remedy at a later date, after hearing proposals from the parties. An appropriate Order accompanies this Memorandum Opinion.

SO ORDERED.

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **January 15, 2015**

**Appendix**

(*In re Grand Jury Subpoenas to Witness X*, No. SP-2802-00 (D.C. Super. Ct. Oct. 23, 2001))

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CRIMINAL DIVISION - SPECIAL PROCEEDINGS BRANCH

IN RE GRAND JURY         |      SP-2802-00

                       |      Chief Judge Rufus G. King III

SUBPOENAS TO WITNESS X    |

### MEMORANDUM ORDER
(October 23, 2001)

This Court has before it Witness X's Amended Motion To Quash Grand Jury Subpoena, To Enjoin The United States From Issuing Further Grand Jury Subpoenas To Witness X, and To Order The United States Attorney To Refrain From Using Compulsory Court Process To Compel The Appearance Of Witnesses At Investigative Interviews ("Am. Mot."); Government's Opposition To Motion To Quash And For Injunctive Relief ("Opp'n"); Witness X's Reply Memorandum ("Reply"); Witness X's Supplemental Exhibit To Reply Memorandum ("Supplemental Ex."); Witness X's Response To Case Cited By The Government For The First Time During Argument On The Motion; Witness X's Supplemental Submission Regarding Current Practices Of The Office Of The United States Attorney ("Supplemental Submission"); Government's Response to PDS's Supplemental Submissions ("Resp. to Supplemental Submissions"); and Witness X's Reply To Government's Response ("Reply to Resp. on Supplemental Submissions").

### I.    Background

Witness X was subpoenaed seven times to appear before a grand jury investigating a homicide. The subpoena in each case directed Witness X to the ninth floor office of the Assistant United States Attorney assigned to the case, where no grand jury sits. Witness X was never put before the grand jury; instead Witness X was interviewed on each occasion by the assigned

1

Assistant United States Attorney and police detectives. After the first six appearances, Witness X was given a certificate of emergency payment of witness fees. On the seventh occasion, Witness X appeared with counsel, who informed the prosecutor that she would seek to quash the subpoena.

Witness X's' counsel filed a motion to quash on October 20, 2000, which was amended on October 23, 2000. The Government filed its opposition on December 6, 2000. A hearing was held on Witness X's motion on January 10, 2001, by which time the Government had withdrawn the original subpoena to Witness X. The Court ruled orally that the Government could issue one additional subpoena to Witness X for a grand jury appearance.

## II.    Issues

Although the Court has disposed of the specific issues involving Witness X, Witness X seeks further declaratory relief. In a number of specific contentions, Witness X is asking for a rule that a grand jury subpoena issue only for an appearance before the grand jury itself. Witness X's additional requests are enumerated below:

1.  Enjoin the Government from using compulsory court process to compel the appearance of witnesses at investigative interviews. Reply at 10, 34. Alternatively stated: Enjoin the Government from issuing grand jury subpoenas that direct witnesses to the offices of Assistant United States Attorneys, or to any floor of the Judiciary Center other than the floor on which the grand jury sits. Am. Mot. at 28;

2.  Revise the standard grand jury subpoena to include a notice of witness rights and access to counsel. Am. Mot. at 28; Reply at 35-6;

3.  Enjoin the Government from paying witness fees out of court funds to persons who have not testified at any court proceeding, or from paying such individuals at all in a manner unauthorized by law. Am. Mot. at 28; Reply at 34;

4.  Prohibit the Government from using a second subpoena to further interview a witness who was not taken before the grand jury pursuant to the first subpoena. Reply at 25, 39-40;

5.  Enjoin the Government from issuing subpoenas for return dates when no grand jury is convened and prepared to hear the testimony of the witness. Reply at 34; and

6.  Order the Government to give written and oral advice about the voluntary nature of an interview, and to secure written consent from any witness the Government seeks to interview on a date that a witness has been subpoenaed to attend the grand jury. Reply at 39; Supplemental Submission at 5-6.

By the time of the hearing, the Government had already taken measures to respond to the first two of Witness X's requests. First, the Government had already instructed its prosecutors to direct witnesses to report only to the second floor of the Judiciary Center, where the grand jury sits. Opp'n at 5, 20. Since that time, the grand jury form of subpoena has been modified to direct witnesses to the floor where the grand jury is located and not to any prosecutor's office. Resp. to Supplemental Submissions at 1. Second, the Government agreed to add a notice provision on the face of the grand jury subpoena. Opp'n at 2, 20; Resp. to Supplemental Submissions at 1.  By the hearing date, however, Witness X and the Government had not come to an agreement on specific language of such a notice provision.

In response to Witness X's third request, the Government opposes any requirement enjoining it from paying witness fees out of court funds to persons who have not testified before the grand jury. Opp'n at 16-19. The Government argues that neither local statute nor case law

3

require that payment to a witness in a court proceeding be contingent upon that witness' actual testifying or even appearing in the courtroom or grand jury room. Id. at 18 (citing D.C. Code Ann. § 15-714 (1981); Super. Ct. Crim. R. 113; and United States v. Hurtado, 410 U.S. 578 (1973)). Rather, Super. Ct. Crim. R. 113(b) requires that a witness provide certification of his or her attendance at court pursuant to subpoena or court direction. In the grand jury context, it is the prosecutor who provides the certification of a witness' attendance. Opp'n at 18.

Finally, the Government opposes all remaining requests as lacking any legal basis in statute or case law.

### III.   Analysis

This motion invokes the Court's supervisory power over the grand jury. See In the Matter of Herbert G. Kelley, 433 A.2d 704, 708 (D.C. 1981); United States v. Moultrie, 340 A.2d 828 (D.C. 1975); United States v. Dionisio, 410 U.S. 1 (1973).

Both parties agree on the fundamental principle that a witness who is subpoenaed for the grand jury is required only to testify before the grand jury. A witness is not required to speak to anyone else about the subject of the grand jury investigation. On facts similar to those presented here, the United States Court of Appeals for the District of Columbia articulated this principle in Durbin v. United States, 94 U.S. App. D.C. 415, 221 F.2d 520 (D.C.C. 1954) (ruling on the legal sufficiency of a criminal complaint stating a possible violation of the law). Durbin remains relevant precedent in the District of Columbia, M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971).

In Durbin, the appellant had been issued multiple grand jury subpoenas by the Government, but was never put before the grand jury. Instead, he was taken each time to the office of the United States Attorney where he was questioned by an Assistant United States Attorney or by F.B.I. agents. The prosecutor admitted that he pursued this practice because he

4

was not satisfied with the appellant's answers.  Id. at 416.  The Durbin court stated that this use

of the grand jury subpoena for investigative purposes is a violation of United States District

Court process:

> [The United States Constitution, our laws, and traditions] do not recognize the United
>
> States Attorney's office as a proper substitute for the grand jury room and they do not
>
> recognize the use of a grand jury subpoena . . . as a compulsory administrative process of
>
> the United States Attorney's office.

94 U.S. App. at 417.  See, e.g., United States v. Wadlington, 233 F.3d 1067, 1075 (8th Cir. 2000)

(finding improper use of subpoena power, where, under the color of a grand jury subpoena, the

prosecutor subjected out-of-state witnesses to substantial questioning at government offices one

full day before the witnesses' scheduled grand jury appearance); United States v. Elliott, 849

F.2d 554, 557 (11th Cir. 1988) ("The court's subpoena power may not, however, be used by the

United States Attorney's office as part of its own investigative process."); United States v.

DiGilio, 538 F.2d 972, 983-5 (3d Cir. 1976) ("[Fed. R. of Crim. Pro.] Rule 17 does not, in our

view, authorize the use of grand jury subpoenas as a ploy for the facilitation of office

interrogation.").

Further indicating the impropriety of using or appearing to use compulsory process

outside of formal court proceedings is United States v. Thomas, 320 F. Supp. 527 (D.D.C. 1970)

(addressing the government's practice of issuing summonses to witnesses for pre-trial

interviews).  In Thomas, the United States District Court for the District of Columbia ordered the

United States Attorney to cease sending to prospective witnesses whom he wished to interview

before trial "any form which includes the word 'Summons' or any derivative thereof or which in

its format and language resembles an official judicial subpoena or similar judicial process or which conveys the impression that non-appearance is subject to sanction[.]" 320 F. Supp. at 530.

In its pleading and at the hearing, the Government enumerated the numerous difficulties surrounding the conduct of grand jury investigations. These difficulties include witness fear and reluctance to cooperate, and the logistics of coordinating the many prosecutors who compete for the limited time of four or five sitting grand juries. Opp'n at 8-9. In short, there may be legitimate reasons for an interview with a witness before he or she appears before the grand jury.

Some courts have encouraged the use of pre-appearance interviews "in order to eliminate unnecessary material before the grand jury and save time of the grand jurors," In re Grand Jury Proceedings (PHE, Inc.), 640 F. Supp. 149, 153 (E.D.N.C. 1986) (quoting United v. Mandel, 415 F. Supp. 1033, 1039 (D. Md. 1976), rev'd on other grounds, 591 F.2d 1347 (4th Cir. 1979)). These courts would permit use of the grand jury subpoena for pre-appearance interviews so long as there is no abuse of process. See 640 F. Supp. at 153 (finding "no clear abuse of the grand jury," where seven witnesses were interviewed by postal inspectors, pursuant to grand jury subpoenas, in lieu of appearing before the grand jury); 415 F. Supp. at 1040 (holding that "in the absence of compelling evidence of abuse of process, such as that in Durbin, supra, this Court will not dismiss an indictment because the prosecutors used the subpoena power to interview witnesses who were not subsequently brought before the Grand Jury").

In In re Possible Violations of 18 U.S.C. §§ 201, 371 (Richard Kelly), the court found no abuse of process where the subpoena duces tecum commanded attendance before the grand jury on a specified date and time, but directed the witness to the office of the Assistant United States Attorney. 491 F. Supp. 211 (D.D.C. 1980). Relying on the government's assertion that these pre-appearance interviews were consensual and were designed to serve logistical purposes

6

(directing the witness to the correct grand jury room and preparing for an orderly presentation of evidence before the grand jury), the court concluded that it "neither condones nor condemns this practice. It is simply unable to hold that compulsory contact between the U.S. Attorney and witness, on the day the grand jury is sitting and prior to the actual testimony of the witness, is adequate grounds to quash the subpoena." 491 F. Supp. at 213 (emphasis added).

Notwithstanding any legitimate reason for a pre-appearance interview, it is clear that the grand jury subpoena cannot be used to compel attendance anywhere but at a grand jury proceeding. Contrary authority, summarized above, can be distinguished on the facts from the instant case.

On the facts presented here, the Court finds that the Government used the grand jury subpoena to compel attendance at the offices of an Assistant United States Attorney, and not at a grand jury proceeding. This was an improper use of the subpoena. Because the Government improperly used its subpoena power, the issuance of a certificate for payment and the payment of witness fees to Witness X violated Super. Ct. Crim. R. 113.

Accordingly, it is, this, twenty-third day of October 2001, hereby

ORDERED that the Office of the United States Attorney shall use the grand jury subpoena only to compel attendance at a grand jury proceeding, and only when a grand jury is sitting and is available to hear the matter for which a witness is called to testify; it is further,

ORDERED that grand jury witnesses shall be paid for their appearances before the grand jury, whether or not they actually testify, so long as there is a good faith expectation that there will be testimony; it is further,

ORDERED that the grand jury subpoena shall be modified to include the following language:

7

This subpoena requires that you appear, at the date and time indicated, to answer questions truthfully before a grand jury. The grand jury is located on the second floor of the Judiciary Center, 555 Fourth Street, NW.

At the same location are the offices of the United States Attorney, the prosecutors who are charged with presenting this case to the grand jury. The prosecutors, with or without the assistance of law enforcement officers, may seek to speak with you about your testimony or what you know about the case or to explain to you why you are being asked to testify. It is an essential part of their job to gather as much information as they can in order to enforce the laws of the District of Columbia effectively. You should understand, however, that any such interview is voluntary and is not compelled by this subpoena. Should you agree to an interview, you have the right to terminate the interview at any point. You are encouraged to speak to an attorney about your rights as a witness.

and it is further,

ORDERED that all other requests be and are hereby DENIED.

SO ORDERED.


Chief Judge Rufus King III
October 23, 2001
Signed in Chambers



Copies to:

Jaclyn S. Frankfurt, Esq.
Counsel for Witness X
Public Defender Service
633 Indiana Avenue, NW
Washington, DC 20004

Clifford T. Keenan, Esq.
Chief, Superior Court Operations
Office of United States Attorney
555 Fourth Street, NW
Washington, DC 20001

8